# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MANZANO OIL CORPORATION, et al.,

    Plaintiffs,

v.                                         Civil No. 00-178 WWD/KBM

CHESAPEAKE OPERATING, INC.,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendant's Motion for Partial Summary Judgment filed July 27, 2001 **(Doc. 28)**. Plaintiffs oppose the motion. Defendant ("Chesapeake"), seeks a declaratory judgment on an oil and gas lease finding that Defendant took action necessary under the lease to extend the primary term beyond its expiration date. For reasons discussed below I find that Defendant did take such action as was necessary to extend the term of the lease.

BACKGROUND

Plaintiffs and Defendant filed Agreed Stipulations with the Court on November 2, 2000. Unless otherwise indicated, facts asserted in this portion of the opinion are derived from the Agreed Stipulation. Information set out in the "Statement of Additional Material Facts" portion of Defendant's Brief in Chief which is not disputed will be treated as undisputed facts and relied on in this opinion. When this information is used it will be identified by its source ( "AMF" for Additional Material Facts) and the paragraph number; viz., AMF¶2.

Weslynn McCallister Howay as lessor, executed an Oil and Gas Lease ("the Lease") dated August 3, 1995, in favor of Defendant as lessee covering certain lands. Howay and Defendant executed an Agreement to Amend Oil and Gas Lease to Correct Legal Description dated September 24, 1996.

Howay as lessor executed an Oil and Gas Lease ("the Top Lease") dated December 8, 1997 , in favor of Plaintiff Magnolia Royalty Company, Inc. ("Magnolia"), lessee, for the identical property described in the lease dated August 3, 1995. On April 13, 1998, Magnolia conveyed overriding royalty interests in the Top Lease to certain individuals and other entities, most, if not all, of whom are Plaintiffs in this law suit. On June 1, 1997, one of those corporate entities and two individuals, by assignments and conveyances, conveyed one-half of their respective interests in the Top Lease to Manzano Oil Corporation, the first named Plaintiff in this law suit.

In May of 1998, Defendant employed a surveyor to survey and prepare a well location, and the property surveyed was within the Lease. AMF¶ 2-4. Defendant could not drill on the Lease land without obtaining a zoning variance, and it did not attempt to obtain a variance in connection with the Lease land. AMF¶ 5.

On May 22, 1998, Defendant purchased a three acre parcel of land adjoining the Leased Lands in order to directionally drill a well from the surface of the purchased parcel to a producing formation within the Leased Lands. Defendant had been advised by the City Manager of Lovington, Bob Carter, that a variance would not be granted on the Lease land because of its proximity to a residential area containing "baseball fields and different things." AMF¶ 7. Defendant had worked with Bob Carter before and believed, from experience, that absent Carter's approval, any application for a variance would fail. AMF¶ 6. On May 28, 1998, Defendant

petitioned the zoning authority of the City of Lovington to obtain a special permit or variance to permit the drilling contemplated above on the purchased land, and the City of Lovington granted the variance related to the "Warehouse 10-1 [directional] well" on June 29, 1998.  The City of Lovington requested that Defendant delay drilling the well until after the City's Fourth of July celebration which was being held in a park next to the drill site.  AMF¶ 14.  On May 29, 1998, Defendant sought a permit to drill the Warehouse 10-1 well from the New Mexico Oil Conservation Division.  Counsel for Plaintiff Bahlburg Exploration, Inc., wrote to the New Mexico Oil Conservation Division to request that the Division "not permit the drilling of the well prior to Chesapeake (sic.)[Defendant's] receiving all necessary regulatory approvals." AMF¶11. Plaintiff Bahlburg Exploration filed a protest of Defendant's application to the Oil Conservation Division ("Division") requesting that the Division refrain from granting Defendant preliminary approval to drill the well.  AMF¶ 16. Defendant sent its directional drilling plan to the Division on June 12, 1998; and the application for permit to drill was approved June 17, 1998.   Effective July 9, 1998, Defendant, Plaintiff Corporations and others entered into a Drilling Development Agreement on the property in the lease.

The Warehouse 10-1 well was spudded on July 27, 1998 on the three acre parcel aforementioned; and on August 12, 1998, the drill bit penetrated the subsurface of the land in the Lease.  In a letter to Defendant dated October 13, 1998, counsel for the Non-Operators (now Plaintiffs) on the Lease informed Defendant, *inter alia,* that "the captioned lease [the Lease] has expired due to the fact that no drilling operations were being conducted on, and there was no production from, the lands covered by the lease or lands pooled therewith at the expiration of its primary term."   A copy of the Top Lease was included in the letter. Defendant's cumulative costs

incurred in drilling the Warehouse 10-1 well totaled $245,071 as of August 3, 1998, the date the three year Lease expired.

DISCUSSION.

The question presented in the Defendant's Motion for Partial Summary Judgment is whether, as a matter of law, Defendant Chesapeake Operating, Inc., as lessee, took action necessary under the Lease dated August 3, 1995, to extend the primary term of that Lease beyond its August 3, 1998, expiration date.   In addition to seeking a dismissal with prejudice of Plaintiff's Complaint, Defendant also requests that the Court grant partial summary judgment on its counterclaim seeking a declaration that the lease is still in effect.   See Amended Ans. & Counterclaim, Count I, "Declaratory Judgment".

Summary judgment issues only where there is no genuine dispute as to a material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Moya v. United States, 35 F.3d 501, 503 (10th Cir. 1994). Summary judgment is appropriate where no facts are in dispute, but only the legal significance of the facts, which is the case here.   See Rummel v. Lexington Ins. Co., 123 N.M. 752, 758 (1997).

Paragraph five of the Lease provides, in pertinent part, that Defendant, the lessee, is "granted the right. . . to pool or combine this lease, the land covered by it or any part or horizon thereof with any other land, leases, mineral estates or parts thereof for the production of oil or gas."  Paragraph five also contains the following language, to wit:

> Drilling operations on or production from any part of any such unit shall be considered for all purposes, except the payment of royalty, as operations conducted upon or production from the land described in this lease. (Emphasis supplied.)

4

Paragraph six of the Lease provides, in pertinent part, that "[i]f at the expiration of the primary term there is no well upon said land capable of producing oil or gas, but lessee has commenced operations for drilling or reworking thereon this lease shall remain in force so long as operations are prosecuted with no cessation of more than 60 consecutive days. . . ."

Paragraph nine of the Lease provides, in pertinent part, that "[s]hould lessee be prevented from complying with any express or implied covenant of this lease, or from conducting drilling or reworking operations hereunder, or from producing oil and gas hereunder. . .by operation of force majeure, or by any federal or state law or any order, rule or regulation of governmental authority, then while so prevented . . .this lease shall be extended. . . ."

As with other leases, the primary consideration when construing an oil and gas lease is to give effect to the intention of the parties. Acquisto v. Joe R. Hahn Enterprises, Inc., 95 N.M. 193, 619 P.2d 1237 (1980). Since neither party argues that any of the relevant provisions are ambiguous, the Lease must be given the legal effect resulting from a construction of the language contained within the four corners of the instrument. Owens v. Superior Oil Co., 105 N.M. 155, 157 (N.M. 1986) (citations omitted).

It is undisputed that Defendant timely began "drilling operations"[1] on the property adjacent to the property covered by the Lease. In A & M Oil, Inc. v. Miller, the Kansas Court of Appeals dealt with circumstances very close to those involved here. I find the reasoning in the Kansas case to be persuasive. The intent of the parties as manifested in the totality of the Lease provisions and in the actions of the parties would permit the drilling of the horizontal well and

---

[1] Defined in Johnson v. Yates Petroleum Corporation, 127 N.M. 355, 981 P2d. 288 (Ct. App. 1999).

5

would allow for the extension of the Lease under the circumstances here presented.  Plaintiffs argue that paragraph 6 of the Lease requires that any drilling actually be on the lands covered by Lease.  I do not agree.  To so hold would substantially negate the provisions of paragraph 5 of the Lease.  See Owens, 105 N.M. at 157 (oil and gas leases must be construed to give effect to all of their provisions so far as possible).  Here the Plaintiffs entered into an agreement which allowed the horizontal well to be drilled and later, on the strained rationale that the well had to be solely on the Leased land, they would work a forfeiture on Defendant.  Lease provisions providing for forfeiture by the lessee will be strictly construed in lessee's favor.  Stamm v. Buchanan, 55 N.M. 127, 227 P.2d 633 (1951) (forfeitures are not favored by the Court).  Thus, I find that adjacent property and the Lease property were "pooled" or "combined" in such a way as to make the provisions of paragraph five of the Lease applicable "for all purposes" including the provisions of paragraph six of the lease which provided for an extension of time where drilling operation had begun.

Defendant has also relied on the *force majeure* provision of paragraph 9 of the lease which would extend the term of the Lease whenever the lessee is prevented from conducting drilling operations by any order, rule, or regulation of governmental authority.  In order to drill on the land covered by the Lease, a variance from the Lovington zoning ordinance would have to be obtained and Defendant had been told by Bob Carter, the City Manager of Lovington, that no such variance would be granted with respect to the land covered by the Lease.  Plaintiffs point out that Carter did not have the authority to grant or deny a request for a variance; and that since Defendants did not apply for a variance to the zoning authority, they should not be allowed to claim that they were prevented from drilling by a *force majeure*.  I do not think that the record is

6

sufficiently developed to say that as a matter of law that Carter's negative indication concerning the obtaining of a variance would determine the way the zoning authority would rule. Accordingly, since there is a separate and distinct basis for ruling on the instant motion, I will not decide the *force majeure* issue, or seek to expand the record on that issue.

**WHEREFORE,**

**IT IS ORDERED** that Defendant Chesapeake Operating, Inc.'s Motion for Partial Summary Judgment **(Doc. 28)** be, and it is hereby, GRANTED in that Plaintiff's Complaint seeking declaratory judgment is DISMISSED WITH PREJUDICE;

**IT IS FURTHER ORDERED** that Partial Summary Judgment is GRANTED to Defendant on Count I ("Declaratory Judgment") on its counterclaim which seeks a declaration that the Lease is still in effect.[2]

_____
UNITED STATES MAGISTRATE JUDGE

---

[2] This Memorandum Opinion and Order does not address Counts II and III of Defendant's counterclaim ("Breach of the Covenant of Good Faith and Fair Dealing" and "Breach of Contract," respectively).